**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Veronica Dominguez, Coni Calixto, Flora Flores, Karen Hernandez, Karen Marquez, Martina Medina Sanchez, Denia Orellana Velasquez, Nancy Reyes, Maria Rosas, Teresa Sanchez, Maria Solis and Anabertha Bravo Lozano on behalf of themselves and all other similarly-situated individuals,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>USAI, LLC and Rose Moreno,<br><br>*Defendants.* | **COMPLAINT**<br><br>Civ. Action No.: 23-cv-9194<br><br>COLLECTIVE AND CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiffs, by their undersigned attorneys the Worker Justice Center of New York and Law Office of Robert D. McCreanor, P.L.L.C. as and for their Collective and Class Action Complaint, allege as follows:

### Preliminary Statement

1.  Plaintiffs Veronica Dominguez, Coni Calixto, Flora Flores, Karen Hernandez, Karen Marquez, Martina Medina Sanchez, Denia Orellana Velasquez, Nancy Reyes, Maria Rosas, Teresa Sanchez, Maria Solis and Anabertha Bravo Lozano ("Plaintiffs")—all non-Caribbean Hispanic individuals—worked for Defendant USAI, LLC ("Defendant"), which manufactures lighting products in New Windsor, New York, and were persistently harassed, denigrated and punished by Defendant's managerial staff who markedly favored their non-Hispanic and Caribbean employees over Plaintiffs.

2.      Plaintiffs assembled light fixtures along the factory's assembly lines, packaged them and prepared them for shipping, and performed other tasks integral to Defendant's large-scale manufacturing operation. They performed this work at a feverish pace and under considerable stress, which was significantly exacerbated by racially derogatory comments and disparate treatment by USAI LLC manager Rose Moreno.

3.      Plaintiffs and other similarly-situated workers at USAI LLC's New Windsor facility were required to arrive at work early and to punch in before their shifts began each day and to immediately report to their work stations and perform physical labor. Frequently, Plaintiffs and their co-workers were required to work through their unpaid "lunch break."  At the conclusion of their shifts, Plaintiffs and their co-workers were required to clean up their work stations, which required several minutes of physical labor beyond the end of their scheduled shift time.  However, Plaintiffs and the other workers were not paid for this pre-shift work, working through their "lunch breaks" or for post-shift work.

4.      Defendants' actions with respect to non-payment of Plaintiffs' earned wages caused significant harm to the workers at the USAI LLC facility:  A worker who was not paid for even 10 minutes a day was deprived of approximately 52 hours of overtime pay per year – well over a thousand dollars each year in unpaid wages.

5.      To remedy these and other legal violations, Plaintiffs bring this action under 42 U.S.C. § 1981 ("Section 1981") and the New York State Human Rights Law, NY Exec. Law § 290 et seq. ("NYSHRL") and also bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") on behalf of themselves and other similarly-situated workers at the USAI

New Windsor facility.  Plaintiffs seek, *inter alia*, their unpaid wages, liquidated

damages, compensation for emotional distress and punitive damages.

## Jurisdiction and Venue

6.      The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C.

§ 1331 (federal question jurisdiction, Section 1981 and 29 U.S.C. § 201 *et seq.*

(FLSA).

7.      The Court has jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C.

§ 1367 (supplemental jurisdiction).  Plaintiffs' state law claims are part of the same

case or controversy as Plaintiffs' federal claim.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.  A substantial part of the

acts and/or omissions giving rise to the claims alleged in this Complaint occurred

within this district.

9.      Defendants reside and/or do business in this district.

## Parties

10.     Plaintiff Veronica Dominguez is a non-Caribbean Hispanic adult who currently

resides in New York State.

11.     Ms. Dominguez was employed by USAI LLC at the New Windsor facility, full-time,

for more than 3 years, until she was fired on April 28, 2023.

12.     Ms. Dominguez's primary and native language is Spanish.

13.     For the entirety of her employment, she was an assembly line worker.

14.     Ms. Dominguez consents in writing to becoming a party in this action. A true and

correct copy of Ms. Dominguez's FLSA consent form is attached hereto as Exhibit A.

15.     Plaintiff Coni Calixto is a non-Caribbean Hispanic adult who currently resides in

New York State.

16.    Ms. Calixto was employed by USAI LLC at the New Windsor facility, full-time, for

more than 12 years, until she was fired on April 28, 2023.

17.    Ms. Calixto's primary and native language is Spanish.

18.    From 2010 to the end of her employment, she was a line leader.

19.    Ms. Calixto consents in writing to becoming a party in this action. A true and correct

copy of Ms. Calixto's FLSA consent form is attached hereto as Exhibit B.

20.    Plaintiff Flora Flores is a non-Caribbean Hispanic adult who currently resides in New

York State.

21.    Ms. Flores was employed by USAI LLC at the New Windsor facility, full-time, for

12 years, until she was fired on April 28, 2023.

22.    Ms. Flores' primary and native language is Spanish.

23.    From approximately 2012 to the end of her employment, she was a line leader.

24.    Ms. Flores consents in writing to becoming a party in this action. A true and correct

copy of Ms. Flores' FLSA consent form is attached hereto as Exhibit C.

25.    Plaintiff Karen Hernandez is a non-Caribbean Hispanic adult who currently resides in

New York State.

26.    Ms. Hernandez was employed by USAI LLC at the New Windsor facility, full-time,

for more than 11 years, until she was fired on April 28, 2023.

27.    From April 2019 to the end of her employment, she was a line leader.

28.    Ms. Hernandez's primary and native language is Spanish.

29.    Ms. Hernandez consents in writing to becoming a party in this action. A true and

correct copy of Ms. Hernandez's FLSA consent form is attached hereto as Exhibit D.

30.    Plaintiff Karen Marquez is a non-Caribbean Hispanic adult who currently resides in New York State.

31.    Ms. Marquez was employed by USAI LLC at the New Windsor facility, full-time, for more than 15 years, until she was fired on April 28, 2023.

32.    From 2017 to 2021, she worked in inventory control and from 2021 to the end of her employment, she worked in the planning office as a cycle counter where she was responsible for assisting "pickers" under the supervision of Rose Moreno.

33.    Ms. Marquez's primary and native language is Spanish.

34.    Ms. Marquez consents in writing to becoming a party in this action. A true and correct copy of Ms. Marquez's FLSA consent form is attached hereto as Exhibit E.

35.    Plaintiff Martina Medina Sanchez is a non-Caribbean Hispanic adult who currently resides in New York State.

36.    Ms. Medina Sanchez was employed by USAI LLC at the New Windsor facility, full-time, for more than 11 years, until she was fired on April 28, 2023.

37.    From 2013 to the end of her employment, she was a line leader.

38.    Ms. Medina Sanchez's primary and native language is Spanish.

39.    Ms. Medina Sanchez consents in writing to becoming a party in this action. A true and correct copy of Ms. Sanchez's FLSA consent form is attached hereto as Exhibit F.

40.    Plaintiff Denia Orellana Velasquez is a non-Caribbean Hispanic adult who currently resides in New York State.

41.    Ms. Orellana Velasquez was employed by USAI LLC at the New Windsor facility, full-time, for more than 15 years, until she was fired on April 28, 2023.

42.  From 2015 to 2020, she was responsible for placing labels on products made in the factory and from 2020 to the end of her employment she worked in the planning office.

43.  Ms. Orellana Velasquez's primary and native language is Spanish.

44.  Ms. Orellana Velasquez consents in writing to becoming a party in this action. A true and correct copy of Ms. Velasquez's FLSA consent form is attached hereto as Exhibit G.

45.  Plaintiff Nancy Reyes is a non-Caribbean Hispanic adult who currently resides in New York State.

46.  Ms. Reyes was employed by USAI LLC at the New Windsor facility, full-time, for more than 11 years, until she was fired on April 28, 2023.

47.  Ms. Reyes' primary and native language is Spanish.

48.  During the 6 years immediately preceding the commencement of this action, Ms. Reyes worked for varying periods of time in quality control, the production office, picking, receiving and shipping.

49.  Ms. Reyes consents in writing to becoming a party in this action. A true and correct copy of Ms. Reyes' FLSA consent form is attached hereto as Exhibit H.

50.  Plaintiff Maria Rosas is a non-Caribbean Hispanic adult who currently resides in New York State.

51.  Ms. Rosas was employed by USAI LLC at the New Windsor facility, full-time, for more than 11 years, until she was fired on April 28, 2023.

52.  Ms. Rosas' primary and native language is Spanish.

53.  For the entirety of her employment, she was an assembly line worker.

54.    Ms. Rosas consents in writing to becoming a party in this action. A true and correct copy of Ms. Rosas' FLSA consent form is attached hereto as Exhibit I.

55.    Plaintiff Teresa Sanchez is a non-Caribbean Hispanic adult who currently resides in New York State.

56.    Ms. Sanchez was employed by USAI LLC at the New Windsor facility, full-time, for more than 15 years, until she was fired on April 28, 2023.

57.    From 2008 to the end of her employment, she was a line leader.

58.    Ms. Sanchez's primary and native language is Spanish.

59.    Ms. Sanchez consents in writing to becoming a party in this action. A true and correct copy of Ms. Sanchez's FLSA consent form is attached hereto as Exhibit J.

60.    Plaintiff Maria Solis is a non-Caribbean Hispanic adult who currently resides in New York State.

61.    Ms. Solis was employed by USAI LLC at the New Windsor facility, full-time, for more than 11 years, until she was fired on April 28, 2023.

62.    For the 4 years preceding her termination, Ms. Solis worked as a line leader.  Before becoming a line leader, she was an assembly line worker.

63.    Ms. Solis' primary and native language is Spanish.

64.    Ms. Solis consents in writing to becoming a party in this action. A true and correct copy of Ms. Solis' FLSA consent form is attached hereto as Exhibit K.

65.    Plaintiff Anabertha Bravo Lozano is a non-Caribbean Hispanic adult who currently resides in New York State.

66.    Ms. Bravo Lozano was employed by USAI LLC at the New Windsor facility, full-time, for more than 17 years, until she was fired on April 28, 2023.

67. For at least 6 years preceding her termination, Ms. Anabertha Bravo Lozano worked as a line leader.  Before becoming a line leader, she was an assembly line worker.

68. Ms. Bravo Lozano's primary and native language is Spanish.

69. Ms. Bravo Lozano consents in writing to becoming a party in this action. A true and correct copy of Ms. Bravo Lozano's FLSA consent form is attached hereto as Exhibit L.

70. Plaintiffs regularly worked alongside other hourly-paid, non-exempt employees at the USAI LLC New Windsor facility located at 1126 River Rd, New Windsor, NY 12553.

71. USAI LLC ("Defendant USAI") is, according to the website https://www.usailighting.com/meet-usai-lighting, a private for-profit company that "leads the industry in designing and manufacturing sophisticated LED products as well as those utilizing a variety of traditional sources, including compact fluorescent and low-voltage halogen."

72. At all times relevant to this action, USAI LLC has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(r)–(s).

73. Upon information and belief, USAI LLC had gross sales made or business done in excess of $500,000 annually for each of the years from 2017 through the present.

74. At all times relevant to this action, USAI LLC was an "employer" of Plaintiffs and others similarly-situated as defined by the FLSA, Section 1981, NYHRL and NYLL.

75. At all times relevant to this action, Plaintiffs and others similarly-situated have been non-exempt employees of Defendants as defined by the FLSA and NYLL.

76.     At all times relevant to this action, Defendants employed Plaintiffs and others similarly-situated within the meaning of the FLSA and NYLL.

77.     Defendant Rose Moreno was, at all relevant times, a supervisor and manager in Defendant USAI LLC's New Windsor facility.

78.     Upon information and belief, at all times relevant to the Complaint, Defendant Rose Moreno made decisions regarding Plaintiffs' wages, working conditions, and employment status at the Defendant corporation.

79.     At all times relevant to the Complaint, Defendant Rose Moreno had the power to hire and fire Plaintiffs, set Plaintiffs' wages, retain time and/or wage records, and otherwise control the terms and conditions of Plaintiffs' employment at the Defendant corporation.

80.     At all times relevant to the Complaint, Defendant Rose Moreno had the power to stop any illegal pay practices at the Defendant corporation.

81.     At all times relevant to the Complaint, Defendant Rose Moreno acted directly and indirectly in relation to the employees of the Defendant corporation.

**Factual Allegations**

82.     Defendant USAI's New Windsor plant is staffed by hundreds of workers, most of whom perform physical labor on the factory floor and some of whom work in office settings.

83.     Defendant USAI's employees at its New Windsor plant generally fall into four racial/ethnic categories: White, African-American, Caribbean Hispanic (individuals identifying as Puerto Rican and Dominican) and non-Caribbean Hispanic.

84.     On or about 2017, Defendant USAI hired Rose Moreno, a Dominican individual, to serve as manager of production in its New Windsor Plant.

85.    In this capacity, Ms. Moreno effectively supervised and/or controlled the work
conditions of all employees working as assembly line workers, line leaders, inventory
control, "pickers" and various other positions involved in Defendant's production
process.

86.    Ms. Moreno also regularly interacted with and frequently exercised control over
workers who were not technically under her direct supervision.

87.    During the four years immediately preceding the filing of this complaint, Plaintiffs all
worked for some period of time in positions which subjected them to Ms. Moreno's
supervision and/or control.

88.    From the start of her employment to the date on which Plaintiffs were terminated, Ms.
Moreno engaged in persistent harassment and abuse of Plaintiffs and other non-
Caribbean Hispanic employees.  This behavior was in marked contrast to Ms.
Moreno's preferential treatment of Defendant's White, African-American and
Caribbean Hispanic employees.

89.    Ms. Moreno stated aloud on the factory floor: "I only want to work with Boriquas,
they know how to work."

90.    Ms. Moreno repeatedly said to Plaintiffs and Defendant's other non-Caribbean
Hispanic employees, "you're lazy, stupid, you don't know how to read or write, you
don't know how to work."

91.    Ms. Moreno regularly yelled at Plaintiffs and Defendant's other non-Caribbean
Hispanic workers, singling them out for such treatment and sometimes bringing them
to tears over accusations that they weren't working hard enough or producing

Defendant's products fast enough. She never did this to Defendant's other employees, even when they worked slower than Plaintiffs.

92. Ms. Moreno regularly threatened Plaintiffs and Defendant's other non-Caribbean Hispanic employees, telling them that she would send them to "la linea de castiga" (the punishment line) if they didn't work harder. She then followed through on these threats, sending them to work in worse conditions where they had to labor at a faster pace with fewer breaks.

93. Ms. Moreno permitted Defendant's Caribbean Hispanic, White and African-American workers to drink soda at their work stations but absolutely forbid Plaintiffs and other non-Caribbean Hispanic workers from doing the same.

94. Ms. Moreno discouraged Plaintiffs and Defendant's other non-Caribbean Hispanic employees from taking bathroom breaks, sometimes not letting them go despite their requests to do so.  She never did this to Defendant's other employees.

95. Plaintiffs and all other employees at Defendant's New Windsor plant were generally assigned to work a shift from 8:00 a.m. to 4:30 p.m., Monday through Friday. They were also frequently assigned to work on Saturdays.

96. From on or about 2017, Defendants maintained a policy and practice of requiring all employees to arrive at the plant and "punch in" before 8:00 a.m.

97. Plaintiffs and Defendants' other employees typically "punched in", using Defendant's electronic time keeping system, between 7:53 a.m. and 7:58 a.m.

98. Plaintiffs were not permitted to punch in prior to 7:53 a.m.

99. Upon punching in, Plaintiffs immediately proceeded to their work stations and performed labor including gathering their tools, performing maintenance of their tools

and organizing their work stations. For example, all line leaders and assembly line workers began removing assembly materials from boxes during this time period. Line leaders also filled out required production forms for USAI during this time period.  These tasks were performed before 8:00 a.m. on a daily basis.

100.    Defendant uniformly "rounded down" Plaintiffs' punch in times to the nearest quarter hour and otherwise never paid Plaintiffs for work performed prior to 8:00 a.m.

101.    Frequently, Plaintiffs were required to continue working through their half hour unpaid lunch break.

102.    Plaintiffs were not compensated for work performed during their lunch breaks.

103.    At the conclusion of their shifts, Plaintiffs were required to put away their tools and sweep their work stations after 4:30 p.m.

104.    Plaintiffs regularly "punched out" between 4:33 p.m. to 4:35 p.m.

105.    Defendant uniformly "rounded down" Plaintiffs' "punch outs" to the nearest quarter hour and otherwise never paid for work performed after 4:30 p.m.

106.    Defendant's policy here, over the time worked, failed to compensate Plaintiffs and others similarly situated for all of their time worked.

107.    For example, during the work week of April 10, 2023 to April 14, 2023, Plaintiff Karen Hernandez worked at least 40 hours and 16 minutes but was paid only her regular hourly rate of pay ($20.17) for 40 hours.

108.    As another example, during the week of March 6, 2023 to March 10, 2023, Plaintiff Denia Orellana Velasquez worked at least 40 hours and 37 minutes but was paid only her regular hourly rate of pay ($20.72) for 40 hours.

109.   As another example, during the week of April 24, 2023 to April 30, 2023, Plaintiff
       Martina Medina Sanchez worked at least 40 hours and 36 minutes but was paid only
       her regular hourly rate of pay ($18.62) for 40 hours.

110.   Defendant's policy resulted in unpaid promised wages during every day of work for
       Plaintiffs and others similarly-situated.

111.   Often these unpaid wages should have been paid at an overtime rate because the
       unpaid work occurred during weeks in which Plaintiffs and others similarly situated
       worked more than 40 hours.

112.   Defendants failed to furnish proper and accurate wage statements to Plaintiffs and
       others similarly situated as required by NYLL § 195(3).

113.   Throughout their employment, Plaintiffs and others similarly situated were furnished
       with wage statements which did not accurately reflect the time worked.

114.   Because Defendants failed to comply with NYLL § 195's requirements and this wage
       theft was not prevented in the first place, Plaintiffs and others similarly situated were
       deprived of the opportunity to spend their wages on necessary expenses, including
       household expenses, food, housing, utilities, and other items, to save their wages in
       interest-bearing accounts, to support their families both within and outside of the
       United States, or to otherwise invest their wages in other ways that could generate
       additional earnings to support their families. As noted above, a worker who was not
       paid for even 10 minutes a day was deprived of approximately 52 hours of overtime
       pay per year – and thus deprived of the opportunity to spend or invest well over a
       thousand dollars each year.

115. Further, because the wage statements Defendants provided to Plaintiffs and others similarly situated were inaccurate and obscured the actual hours worked, Plaintiffs and other similarly situated workers were not made aware that Defendants were required to pay them for their pre-shift and post-shift work.

116. The legal requirement that the wage statement reflect all time worked was enacted, in part, to ensure workers like Plaintiffs and other similarly situated workers were better informed about their legal right to be paid for all time worked.

117. As a result, in part, of Defendants' obscuring the actual time worked and Plaintiffs' resulting lack of awareness about their legal rights to be paid for their pre-shift and post-shift time worked, Plaintiffs and other similarly situated workers were delayed in learning about and taking action to recover their unpaid wages.

**FLSA Collective Action Allegations**

118. Plaintiffs bring their FLSA overtime wage claims, the First Cause of Action, as a collective action under 29 U.S.C. § 216(b) on behalf of themselves and those individuals who may opt into the "FLSA Collective" defined as: "all current and former hourly paid employees who worked for USAI, LLC at its New Windsor, NY plant as manual laborers including but not limited to assembly line workers, line leaders, cycle counters, labeling workers, picking and shipping workers, at any time between October 19, 2020 through the date of final judgment in this matter."

119. The current and former employees described above are situated similarly to Plaintiffs within the meaning of FLSA, 29 U.S.C. § 216(b) and, therefore, the First Cause of Action herein may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA.

120.   Common proof applicable to Plaintiffs and the other workers will show that
       Defendants failed to pay wages as required by the FLSA to Plaintiffs and other
       workers.

121.   These causes of action are also maintainable as collective actions pursuant to FLSA,
       29 U.S.C. § 216(b), because the prosecution of separate actions by individual
       members of the FLSA Collective would create a risk of inconsistent or varying
       adjudications with respect to individual current and former employees which would
       establish incompatible standards of conduct for Defendants.

122.   The names, last known addresses and cell phone numbers of the proposed FLSA
       Collective members are available to Defendants.  Defendants therefore should be
       required to provide Plaintiffs with a list – including names, last known addresses, cell
       phone numbers, and email addresses if known – of all current and former employees
       who would be members of the proposed FLSA Collective.

123.   Notice of and an opportunity to join this lawsuit should be provided to all potential
       opt-in Plaintiffs both by first class mail to their last known address and by workplace
       posting, as well as by other practicable means including but not limited to text
       messaging, as soon as possible.

**Rule 23 Class Action Allegations**

124.   Plaintiffs bring their NYLL claims, the 2nd, 3rd and 4th Causes of Action, on behalf of
       themselves and all other similarly situated individuals (hereinafter "the NYLL Class")
       under Rules 23(a), (b)(1) and (b)(3) of the Federal Rules of Civil Procedure.

125.   The NYLL Class is defined as follows: "all current and former hourly paid employees
       who worked for USAI, LLC at its New Windsor, NY plant as manual laborers

including but not limited to assembly line workers, line leaders, cycle counters, labeling workers, picking and shipping workers, at any time between October 19, 2017 through the date of final judgment in this matter."

126.  The persons in the NYLL Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than 300 members of the NYLL Class during the six years prior to the filing of this lawsuit.

127.  The claims of the named Plaintiffs are typical of the claims of the Classes. Members of the proposed class have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

128.  Plaintiffs and the Class members have the same statutory rights under the statutes.

129.  Named Plaintiffs and the Class members suffered similar types of damages.

130.  The named Plaintiffs' claims are typical of the claims of the Classes because, among other things, Plaintiffs suffered the same labor law violations as other employees.

131.  Plaintiffs' interests are co-extensive with the interests of the Class members, and Plaintiffs have no interests adverse to the Class members.

132.  Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs' interests do not conflict with the interests of the members of the Class they seek to represent.

133.  Plaintiffs understand that, as class representatives, they assume a responsibility to the class to represent its interests fairly and adequately.

134.  Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters.  There is no reason why these Plaintiffs and their counsel will not vigorously pursue this matter.

135.  The Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

136.  There are questions of law and fact common to the Classes which predominate over any questions affecting only individual members.

137.  Questions of law and fact common to NYLL class as a whole include, but are not limited to the following:

   a.  Whether Defendants are employers under the FLSA and/or the NYLL;

   b.  Whether Defendants failed to pay class members their promised wages for all hours worked, in violation of the NYLL;

   c.  Whether Defendants illegally rounded class members' hours and thus failed to pay class members as required by law;

   d.  Whether Defendants unlawfully failed and continue to fail to pay required overtime compensation in violation of FLSA;

   e.  Whether Defendants unlawfully failed and continue to fail to pay overtime compensation in violation of NYLL; and

   f.  Whether Defendants failed to provide legally-required wage statement notices, in violation of NYLL.

138.  A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein – particularly in the context of wage and hour litigation

and workplace discrimination claims for low-wage workers where individual employees lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

139.    The damages suffered by each individual class member may be limited.  Damages of such magnitude are small given the burden and expense of individual prosecution of the litigation necessitated by Defendants' conduct.

140.    Further, it would be difficult for individual members of the Classes to effectively individually obtain redress for the wrongs done to them.  If individual actions were to be brought by each member of the Classes, the result would be a multiplicity of actions, creating hardships for members of the Classes, the Court, and the Defendants.

141.    Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the Court system.

142.    By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

143.    This case does not present individualized factual or legal issues which would render a class action difficult.

144.    In the alternative, the NYLL Class may be certified because:

    (a)    the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

    (b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of

the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**FIRST CAUSE OF ACTION**
**FLSA – Overtime Compensation Violations**
**On Behalf of Plaintiffs and those individuals**
**who may opt into the FLSA Collective**

145.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

146.    Plaintiffs and other similarly-situated workers regularly worked more than 40 hours in a single work week.

147.    Defendants willfully failed to pay Plaintiffs and the other similarly-situated manual laborers an overtime premium of one half of their regularly hourly rate for every hour they worked above 40 in a work week.

148.    Defendants' failure to pay an overtime premium for all hours worked above 40 in a work week violates the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

149.    Plaintiffs and other similarly-situated workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendants' unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

150.     Plaintiffs and other similarly-situated workers also seek, and are entitled to, attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NYLL – Overtime Compensation Violations**
**On Behalf of Plaintiffs and the NYLL Class**

151.    Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

152.    Defendants willfully failed to pay Plaintiffs and others similarly situated overtime at a rate of at least one-and-a-half times their regular hourly rate for every hour they worked above forty (40) hours in a single work week.

153.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, and 681.

154.    Plaintiffs and the NYLL Class are entitled to their unpaid wages mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendants' unlawful actions and omissions, in accordance with NYLL §§ 198, 663, and 681.

155.    Plaintiffs also the NYLL Class also seek, and are entitled to, attorneys' fees, costs, and interest.

**THIRD CAUSE OF ACTION**
**NYLL – Failure to Pay Promised Wages for All Hours Worked**
**On Behalf of Plaintiffs and the NYLL Class**

156.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

157.    Defendants willfully failed to pay Plaintiffs and others similarly situated promised wages for all hours worked, in violation of NYLL § 193.

158.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, 681.

Page 20 of 24

159.    Plaintiffs and the NYLL Class are therefore entitled to their unpaid wages as mandated

by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence

of Defendants' unlawful acts and omissions in accordance with NYLL §§ 198, 663,

681.

160.    Plaintiffs and the NYLL Class also seek, and are entitled to, attorneys' fees, costs, and

interest.

## FOURTH CAUSE OF ACTION
### NYLL – Wage Statement Violations
### On Behalf of Plaintiffs and the NYLL Class

161.    Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by

reference the foregoing allegations as if fully set forth herein.

162.    Defendants failed to provide Plaintiffs and others similarly situated with accurate wage

statements with every payment of wages which provided all of the information required

under NYLL § 195(3).

163.    For Defendants' violation of NYLL § 195(3), Plaintiffs and others similarly situated

are entitled to $250 for each day of work in which this violation continued to occur, in

an amount not to exceed $5,000, pursuant to NYLL § 198(1-d).

164.    Plaintiffs also seek, and are entitled to, attorneys' fees, costs, and interest.

## FIFTH CAUSE OF ACTION
### Section 1981 – Discrimination
### On Behalf of the Named Plaintiffs

165.    Plaintiff re-alleges and incorporate by reference all of the previous allegations as if

fully set forth herein.

166.    By the actions set forth above, among others, Defendants have discriminated against

Plaintiffs in violation of Section 1981.

167.   Defendants discriminated against Plaintiffs because of their race and ethnicity and subjected them to a hostile work environment because of their race and ethnicity.

168.   As a result of Defendants' illegal actions, Plaintiffs have suffered, and continue to suffer, economic harm including loss of past and future income, mental anguish, and emotional distress for which they are entitled to damages.

169.   Defendants' actions were malicious, willful, and wanton violations of Section 1981 for which Plaintiffs are entitled to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
**New York State Human Rights Law – Discrimination**
**On Behalf of the Named Plaintiffs**

170.   Plaintiffs restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

171.   By the actions set forth above, among others, Defendants have discriminated against Plaintiffs in violation of the New York State Human Rights Law.

172.   Defendants discriminated against Plaintiffs and subjected the Plaintiffs to a hostile work environment because of their race, ethnicity, national origin, and color.

173.   Defendants' actions were in direct violation of the New York State Human Rights Law, Executive Law § 290 *et. seq.*

174.   As a result of Defendants' willful and illegal actions, Plaintiffs have suffered, and continue to suffer, economic harm including loss of past and future income, mental anguish, and emotional distress for which they are entitled to damages.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

a.  assuming jurisdiction over this action;

b.  declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allowing employees to opt into the action;

c.  certifying this case as a class action in accordance with Fed. R. Civ. P. 23 with respect to Causes of Action 2 through 4;

d.  declaring Defendants violated the FLSA, NYLL, Section 1981 and the NYHRL;

e.  ;

f.  granting judgment to Plaintiffs and others similarly situated who may opt into this action on their FLSA claims and awarding unpaid wages and an equal amount in liquidated damages;

g.  granting judgment to Plaintiffs and others similarly situated on their NYLL claims and awarding unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

h.  granting judgement to Plaintiffs on their Section 1981 and NYHRL claims and awarding damages including lost wages, compensation for emotional distress, and punitive damages;

i.  awarding Plaintiffs and others similarly situated prejudgment and post-judgment interest as allowed by law;

j.  awarding Plaintiffs and others similarly situated their costs and reasonable attorneys' fees; and

k.  granting such further relief as the Court deems just and proper.

DATED:      Hawthorne, NY
            October 19, 2023

/s/ Robert McCreanor
Robert McCreanor
Law Office of Robert D. McCreanor, P.L.L.C.
245 Saw Mill River Road
Suite 106
Hawthorne, NY 10532
(845) 202-1833
rmccreanor@rdmclegal.com


Maureen Hussain
Worker Justice Center of New York
245 Saw Mill River Road, Suite 106
Hawthorne, NY 10532
(845) 331-6615
mhussain@wjcny.org


*Attorneys for Plaintiffs*